IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA    :

   v.    :    Criminal No. DKC 09-0308

JOHN D. SINCLAIR    :

**MEMORANDUM OPINION**

Appellant John D. Sinclair appeals his convictions of two counts of fleeing or eluding police in violation of Md. Code Ann., Transp. ("TA") §§ 21-904(b)(1) and (2). For the reasons that follow, the judgment will be reversed in part, affirmed in part, and the case remanded.

**I. Background**

On March 13, 2006, at approximately 8:20 p.m., Sergeant Russell Fennelly, a fourteen-year veteran of the United States Park Police, was "patrolling southbound on the Baltimore-Washington area Parkway" ("the Parkway") when he observed a blue Acura traveling in the opposite direction "at a high rate of speed." (ECF No. 6, Trial Tr., at 6). In pursuit, approximately "40 to 50 yards behind" the Acura, was "a fully marked Metropolitan Police Department ["MPD"] cruiser with emergency lights and siren activated" and "the [MPD's] helicopter was directly above [the Acura] with the spotlight

shining on the . . . vehicle." (*Id*.). Based on his training and experience, Sergeant Fennelly estimated that the Acura was traveling "in excess of 80 miles an hour." (*Id*. at 14). He observed the vehicle for approximately three to four seconds as it passed.

After "contact[ing] communications to find out what was going on," Sergeant Fennelly "made a U-turn" and "continued north, trying to catch up to the [MPD] Unit and the helicopter." (*Id*. at 17).[1] He lost sight of the Acura and MPD cruiser, but was able to see the helicopter at all times. Guided by the location of the helicopter and radio reports, Sergeant Fennelly exited the Parkway at Route 197. At the bottom of a ramp, he observed "the blue Acura that the Metropolitan Police Department was chasing" coming to a stop beneath a nearby bridge. (*Id*. at 18). There were no other police cars at the scene, but the helicopter was hovering above with its spotlight trained on the vehicle. Sergeant Fennelly "didn't have any doubt" that it was the same vehicle he had seen speed past him earlier. (*Id*. at 41).

As the police cruiser pulled up behind the Acura, Appellant exited the driver's side door and began to run. Sergeant

---

[1] Park Police Officer Eric Basek testified that he was also involved in the pursuit of the Acura. At one point, he was "[t]hree or four cruisers back" during the chase, but could not identify the driver or tag information and later lost sight of the vehicle. (*Id*. at 56).

2

Fennelly, who was in uniform and driving a "fully marked police car" with its emergency lights activated (*id*. at 44-45), exited his vehicle and yelled "stop, police" from a distance of approximately thirty yards, but Appellant continued running up a hill adjacent to the bridge (*id*. at 20). Sergeant Fennelly pursued on foot, observing Appellant "turn back and look at [him] and then continue" running until he reached the top of the hill, at which point he "jumped over the stone wall onto the southbound lanes of the [P]arkway." (*Id*. at 21). After briefly running along the Baltimore-Washington Parkway, Appellant ran back "down the hill, through the woods, across . . . eastbound 197 . . . and then into [a] wooded area." (*Id.* at 22).

Sergeant Fennelly learned from radio reports that Appellant had entered the fenced backyard of a nearby townhouse. Along with approximately seven other officers, he proceeded into the yard and found Appellant attempting to hide in the rafters of a rear deck. Appellant was placed under arrest and his car key was found "[u]nderneath a gas can in the backyard adjacent to where he had been hiding up in the rafters." (*Id*. at 27).[2] Sergeant Fennelly later "took the key back to the [Acura and]

---

[2] Officer Basek arrived at the scene after the foot chase had begun. He was among the officers who entered the backyard and observed Appellant attempting to hide beneath the deck. He testified that the Acura he saw parked under the bridge on Route 197 was the same make, model, and color as the one he had pursued on the Parkway. (ECF No. 6, at 57).

3

used it to start the car for the crane and [to] check the trunk." (*Id.*).

Appellant was issued two citations for fleeing or eluding police, in violation of TA §§ 21-904(b)(1) and (2); a citation for walking along a controlled access highway, in violation of TA § 21-509; and a citation for reckless driving, in violation of TA § 21-801(b). (ECF No. 2). When Appellant failed to make his initial appearance in court on May 5, 2006, a bench warrant was issued. The warrant was served on or about February 12, 2009. On the same date, Appellant appeared in court voluntarily, was appointed counsel, and was detained pending trial.

A bench trial was held on April 16, 2009, before United States Magistrate Judge Thomas M. DiGirolamo. At the close of the evidence and after hearing argument from counsel for the parties, Judge DiGirolamo found Appellant guilty of both counts of fleeing or eluding police and of walking along a controlled access highway, but not guilty of reckless driving. On May 7, 2009, Appellant was sentenced to time served as to each of the three counts of which he was convicted, the sentences running concurrently.[3] As to each count, he was ordered to pay an assessment fee of $10.00 and a processing fee of $25.00.

---

[3] The written judgment lists the fleeing or eluding police charges as violations of "MTA 21-904 G 1" and "MTA 21-904 G 2."

4

Appellant, by counsel, noted a timely appeal (ECF No. 1) and, on August 12, 2009, filed a memorandum challenging the sufficiency of the evidence as to both counts of fleeing or eluding police (ECF No. 8). The Government filed an answering memorandum on September 22, 2009. (ECF No. 12).[4]

---

(ECF No. 2-14). As TA § 21-904 does not contain a subsection (g), this appears to be a transcriptional error. The citations themselves reflect that Appellant was cited for violations of TA §§ 21-904(b)(1) and (2). (ECF No. 2).

[4] Appellant filed *pro se* reply papers approximately five months later. (ECF No. 13). The court's local rules do not permit the filing of reply memoranda in appeals from decisions of magistrate judges in criminal cases. *See* Local Rule 302.1. Accordingly, this document will not be considered.

On September 16, 2011, Appellant filed a *pro se* motion alleging that his appellate counsel rendered ineffective assistance by "refus[ing] to []present all issues expressed by the [Appellant]" and requesting the appointment of "new counsel that will present all issues." (ECF No. 14, at 1). Specifically, he faults his appellate counsel for failing to raise claims of ineffective assistance of trial counsel on direct appeal. The court construes this motion as brought pursuant to 28 U.S.C. § 2255. Because the appeal was still pending at the time the motion was filed, it is premature and will be denied without prejudice.

To the extent his motion for appointment of new counsel is distinct from his ineffective assistance claim, he has failed to show that such relief is warranted. Claims of ineffective assistance of trial counsel are not cognizable on direct appeal unless the record conclusively establishes ineffective assistance. *See United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999). Because the record in this case does not reflect that Appellant's trial counsel's representation was constitutionally infirm, his appellate counsel's decision not to raise an ineffective assistance claim on direct appeal was prudent. Indeed, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

## II. Standard of Review

In reviewing an appeal from a bench trial before a magistrate judge, the district court uses the same standard of review applied by a court of appeals reviewing a district court conviction. *See United States v. Bursey*, 416 F.3d 301, 305-06 (4th Cir. 2005), *cert. denied*, 546 U.S. 1139 (2006). The court reviews factual findings for clear error and legal conclusions *de novo*. *See United States v. Juvenile Male*, 554 F.3d 456, 465 (4th Cir. 2009); *United States v. Murphy*, 552 F.3d 405, 409 (4th Cir. 2009), *cert. denied*, 129 S.Ct. 2016 (2009).

Review for sufficiency of the evidence also proceeds on a familiar standard: A conviction may be reversed for insufficient evidence only if the evidence was so insubstantial that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), *reh'g denied*, 444 U.S. 890 (1979). The reviewing court must "view the evidence in the light most favorable to the government, and . . . give the government the benefit of all reasonable inferences favorable to the government's case that logically may be drawn from the evidence." *United States v. Lanen*, 716 F.Supp. 208, 209-10 (D.Md. 1989) (quoting *United States v. Archambault*, 670 F.2d 800, 801 (8th Cir. 1982)). If the court determines that "a rational trier of fact could conclude beyond a reasonable doubt"

that the defendant was guilty, it must affirm the conviction. *Lanen*, 716 F.Supp. at 210 (quoting *United States v. Klose*, 552 F.Supp. 982, 984 (E.D.Pa. 1982)). The court may not re-weigh the evidence or reconsider the credibility of witnesses. *See United States v. Hunter*, No. RWT 10cr32, 2010 WL 2245037, at *1 (D.Md. June 4, 2010) (citing *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997)).

**III. Analysis**

TA § 21-904 provides, in pertinent part:

> (a) *"Visual or audible signal" defined*. – In this section, "visual or audible signal" includes a signal by hand, voice, emergency light or siren.
>
> (b) *Failing to stop vehicle*. – If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by:
>
>> (1) Willfully failing to stop the driver's vehicle;
>>
>> (2) Fleeing on foot; or
>>
>> (3) Any other means.
>
> (c) *Fleeing on foot*. – If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by:

7

>     (1) Willfully failing to stop the driver's vehicle;
>
>     (2) Fleeing on foot; or
>
>     (3) Any other means.

The Court of Special Appeals of Maryland recently interpreted this provision in *Washington v. State*, --- A.3d ----, 2011 WL 3890511, at *11 (Md.App. Sept. 6, 2011):

> The statutory language reveals that the real distinction between subsections (b) and (c) does not concern the conduct of the driver/defendant; rather, it concerns the source of the police signal to stop. In subsection (b), the source of the signal is a uniformed police officer while in subsection (c), the source of the signal is an appropriately marked police vehicle. The behavior that may constitute fleeing or eluding police by a driver is the same in both subsections, and is not limited, as it can be carried out by "[a]ny other means." Thus, a driver can violate subsection (b) by willfully failing to stop his vehicle, fleeing on foot, or attempting to elude in any other way a uniformed police officer who gives a signal to stop. Likewise, a driver can violate subsection (c) by willfully failing to stop his vehicle, fleeing on foot, or attempting to elude in any other way a marked police vehicle that signals him to stop. Thus, the conduct of the driver/defendant is not central to whether there has been a subsection (b) or subsection (c) violation.

Indeed, the court made clear that where the source of the signal to stop was a uniformed officer traveling in a marked police vehicle, "the appellant could have been charged not only with

subsection (b)(2) and (c)(1)," as he was in that case, "but also with subsection (b)(1) and (c)(2)." *Id*.

Here, one of Appellant's fleeing or eluding convictions was for violation of subsection (b)(1) – *i.e.*, a driver attempting to elude a uniformed police officer by willfully failing to stop his vehicle – and the other was for violation of subsection (b)(2) – *i.e.*, a driver attempting to elude a uniformed police officer by fleeing on foot. In finding Appellant guilty of these offenses, Judge DiGirolamo reasoned as follows:

> Sergeant Fennelly is on the Baltimore-Washington Parkway. He is traveling southbound. . . .
>
> He sees coming in the other direction a vehicle at a high rate of speed being followed by a police vehicle with its lights on, sirens on, about 40 to 50 yards behind the target vehicle, and a police helicopter shining its spotlight down on the vehicle.
>
> I guess I take some issue with the defense in the argument that Sergeant Fennelly would not have much of a chance to view the vehicle. . . .
>
> It is not like you are seeing [vehicles traveling in the opposite direction] at a split second. . . . I agree that [the vehicles were] closing but I think Sergeant Fennelly had more of an opportunity to view the vehicle than the defense is giving him credit for.
>
> . . . .
>
> Sergeant Fennelly testifies [that] . . . the other [car] is going in the other direction, so he loses sight of him except

9

>     for the helicopter. He makes a turn, comes
>     back. He still loses sight of the cars.
>
>     He is still looking at the helicopter
>     though, and finally, he gets off where he
>     believes the helicopter is shining the
>     lights down, and in his opinion sees the
>     same vehicle which he saw just minutes,
>     seconds . . . earlier, so not a long period
>     of time.
>
>     I do draw the inference from those
>     facts that Sergeant Fennelly, the vehicle he
>     saw at the ramp stopped is the same vehicle,
>     which he testified he saw up on the parkway
>     fleeing from the other officers.
>
>     Sergeant Fennelly testifies that he
>     see[s] a person get out of the vehicle. It
>     is the Defendant. He is close enough at
>     that point. [He] [o]rders the Defendant to
>     stop, police. Sergeant Fennelly says he is
>     about 30 yards away at that time. The
>     Defendant did not stop. He ran up the hill
>     towards the parkway, jumped the wall onto
>     the parkway.
>
>     Sergeant Fennelly observed him running
>     over the shoulder of the parkway, and then
>     come back over the wall, run down the berm,
>     across the road and then eventually where he
>     was found in the backyard of a townhouse
>     with the key to the vehicle basically within
>     a matter of feet from where he was.
>
>     Therefore, I believe the Government has
>     proven beyond a reasonable doubt two
>     separate incidents of fleeing and eluding.

(ECF No. 6, at 75-78).

While Judge DiGirolamo did not have the benefit of the Court of Special Appeals' extensive analysis of the relevant provision at the time he rendered his decision, it is clear,

10

based on *Washington*, that the evidence adduced at trial was insufficient to support Appellant's conviction under TA § 21-904(b)(1). The elements of that offense are (1) that a police officer, in uniform, gives a signal for a driver to stop, and (2) that the driver willfully fails to stop his vehicle in response. The evidence in this case establishes that Sergeant Fennelly was in uniform, but does not support that Appellant willfully failed to stop his vehicle in response to Sergeant Fennelly's signal. To be certain, there is sufficient evidence that Appellant failed to stop the Acura in response to the emergency signal of the MPD cruiser that Sergeant Fennelly initially observed in pursuit, but there is no evidence that the driver of the MPD cruiser or any other pursuing officer, including Officer Basek, was in uniform. By the time Sergeant Fennelly turned around his vehicle and attempted to join the car chase, he could see neither the Acura nor the MPD cruiser; thus, the evidence does not support that Appellant failed to stop his vehicle in response to Sergeant Fennelly's signal at that time. When Sergeant Fennelly later approached the Acura beneath the bridge on Route 197, moreover, Appellant was in the process of stopping and did, in fact, stop the vehicle. Accordingly, Appellant's conviction under TA § 21-904(b)(1) cannot be sustained.

This is of little consequence, however, because there is ample evidence supporting Appellant's conviction under § 21-904(b)(2). To establish guilt under that provision, the Government was required to prove (1) that a police officer, in uniform, gave a signal for a driver to stop, and (2) that the driver subsequently fled on foot. Here, Sergeant Fennelly testified that he observed the Acura, from which he later saw Appellant exit through the driver-side door, in the process of coming to a stop beneath a nearby bridge on Route 197, with the MPD helicopter hovering above and its spotlight trained on the vehicle. Thus, Appellant was clearly a driver, as contemplated under the statute. Sergeant Fennelly was in uniform and the emergency lights of his cruiser were activated as he pulled up behind the Acura. Appellant nevertheless began to run and failed to stop when Sergeant Fennelly yelled "stop, police" from a distance of approximately thirty yards. (ECF No. 6, at 20). Accordingly, evidence was presented supporting all the required elements of the offense under subsection (b)(2).

Despite Appellant's argument to the contrary, there was sufficient evidence supporting the court's conclusion that he was a driver within the "boundaries of federally owned lands and waters administered by the National Park Service." 36 C.F.R. § 1.2(a)(1). Both Sergeant Fennelly and Officer Basek testified unequivocally that the car they saw parked beneath the bridge

was the same vehicle they pursued on the Parkway a short time earlier, and Judge DiGirolamo properly credited this testimony. It is well-established, moreover, that the Parkway is a geographic area under the federal government's jurisdiction. *See United States v. Pardee*, 368 F.2d 368, 370 n. 2 (4th Cir. 1966) (citing *United States v. Dreos*, 156 F.Supp. 200, 202-07 (D.Md. 1957)). To the extent Appellant suggests that the entire offense was required to occur on federal land, he is mistaken. "A sovereign has jurisdiction to try an offense where only a part of that offense has been committed within its boundaries." *Leonard v. United States*, 500 F.2d 673, 674 (5th Cir. 1974) (citing *Ford v. United States*, 273 U.S. 593 (1927)). The uncontroverted evidence adduced at trial in this case supported that part of the foot chase, as Appellant ran from Sergeant Fennelly, occurred on the Parkway. Accordingly, Appellant's conviction under TA § 21-904(b)(2) will be affirmed.

**IV. Conclusion**

For the foregoing reasons, Appellant's conviction under TA § 21-904(b)(1) will be reversed; his conviction under TA § 21-904(b)(2) will be affirmed; and the case will be remanded so that Appellant's conviction and sentence under § 21-904(b)(1)

can be vacated and an amended judgment, correcting the apparent transcriptional errors in the original, can be entered. A separate order will follow.

```
          _____/s/_____
          DEBORAH K. CHASANOW
          United States District Judge
```